```
                DISTRICT COURT OF THE VIRGIN ISLANDS
                 DIVISION OF ST. THOMAS AND ST. JOHN

JOHN R. STEWART and MARCIA STEWART,    )
                                       )
                Plaintiffs,            )
                                       )
           v.                          )        Civil No. 2012-28
                                       )
WHITECAP INVESTMENT CORP., d/b/a       )
PARADISE LUMBER; PUTNAM LUMBER &       )
EXPORT CO.; PUTNAM FAMILY PROPERTIES,  )
INC.; and GREAT SOUTHERN WOOD          )
PRESERVING, INC.,                      )
                                       )
                Defendants.            )
_____)
WHITECAP INVESTMENT CORP., d/b/a       )
PARADISE LUMBER,                       )
                                       )
                Cross-claimant,        )
                                       )
           v.                          )
                                       )
PUTNAM LUMBER & EXPORT CO.; PUTNAM     )
FAMILY PROPERTIES, INC.; and GREAT     )
SOUTHERN WOOD PRESERVING, INC.,        )
                                       )
                Cross-claim defendant. )
_____)
                                       )
PUTNAM FAMILY PROPERTIES, INC.,        )
                                       )
                Cross-claimant,        )
                                       )
           v.                          )
                                       )
WHITECAP INVESTMENT CORP., d/b/a       )
PARADISE LUMBER; and GREAT SOUTHERN    )
WOOD PRESERVING, INC.,                 )
                                       )
                Cross-claim defendants.)
_____
```

*Stewart v. Whitecap Inv. Corp.*
Civil No. 2010-139
Memorandum Opinion
Page 2

|  |  |
|---|---|
| | ) |
| **PUTNAM LUMBER & EXPORT COMPANY,** | ) |
| | ) |
| Cross-claimant, | ) |
| | ) |
| v. | ) |
| | ) |
| **WHITECAP INVESTMENT CORP., d/b/a** | ) |
| **PARADISE LUMBER; and GREAT SOUTHERN** | ) |
| **WOOD PRESERVING, INC.,** | ) |
| | ) |
| Cross-claim defendant. | ) |
| | ) |

**ATTORNEYS:**

**Nancy D'Anna, Esq.**
Law Offices of Nancy D'Anna
St. John, VI
        *For the plaintiffs*,

**Chad C. Messier, Esq.**
**Alex Moskowitz, Esq.**
Dudley, Topper & Feuerzeig
St. Thomas, VI
        *For the defendant/cross-claimant Whitecap Investment Corp.*
        *d/b/a Paradise Lumber,*

**Lisa M. Komives, Esq.**
Bolt Nagi PC
St. Thomas, VI
**Robert A. Carlson, Esq.**
Lee, Hernandez, Landrum, Garofalo and Blake APC
Miami, FL
        *For the defendants/cross-claimaints Putnam Lumber & Export*
        *Co. and Putnam Family Properties, Inc,*

**Daryl C. Barnes, Esq.**
Bryant, Barnes, Moss & Beckstedt
St. Croix, VI
**Stewart Andrew Kelly, Esq.**
Lightfoot, Franklin & White, LLC
Birmingham, AL
        *For the defendant/cross-claim defendant Great Southern Wood*
        *Preserving, Inc.*

Stewart v. Whitecap Inv. Corp.
Civil No. 2010-139
Memorandum Opinion
Page 3

## MEMORANDUM OPINION

**GÓMEZ, C.J.**

Before the Court are the motions of the defendant/cross-claim defendant Great Southern Wood Preserving ("GSWP") to dismiss all claims and cross-claims asserted against it for want of personal jurisdiction.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

GSWP is an Alabama lumber wholesaler. It operates principally in Alabama. In addition to selling wood directly, it also provides chemical and pressure treatments to prevent lumber from decaying. The ostensible purpose of such treatments is to render the lumber safe for use in buildings.

From in or about 2003 until in or about 2009, GSWP regularly sold treated lumber and provided lumber-treatment services to the defendant/cross-claimant Putnam Family Properties, Inc., doing business as Putnam Lumber and Export Company ("Putnam Lumber"). Putnam Lumber, a Florida corporation, is itself a lumber retailer. Putnam Lumber regularly sold lumber to, among others, the defendant/cross-claimant Whitecap Investment Corporation, doing business as Paradise Lumber ("Paradise Lumber").

Paradise Lumber is a lumber retailer operating in St. John, United States Virgin Islands. It sold lumber that it had

*Stewart v. Whitecap Inv. Corp.*
Civil No. 2010-139
Memorandum Opinion
Page 4

purchased from Putnam Lumber, and which had been treated by GSWP, to various consumers in St. John. These consumers used the lumber in their sundry buildings. Two of these consumers are the plaintiffs in the instant case, John R. Stewart and Marcia Stewart (collectively, the "Stewarts").

The Stewarts claim that the GSWP-treated lumber prematurely decayed, causing damage to their house, into which it had been incorporated.

After receiving complaints from consumers like the Stewarts about the GSWP-treated lumber, on December 29, 2010, Paradise Lumber initiated an action against, among others, GSWP in this court. That action is captioned *Whitecap Investment Corp. v. Putnam Lumber & Export Co.*, Civ. No. 2010-139 (the "Paradise Lumber Case").

The Stewarts initiated the present action on May 3, 2012, naming GSWP, Paradise Lumber, and Putnam Lumber as defendants. On May 29, 2012, Paradise Lumber filed cross-claims against the other defendants, including GSWP. On June 12, 2012, Putnam Lumber filed cross-claims against the other defendants, including GSWP.

On August 2, 2012, GSWP moved to dismiss the complaint in the Paradise Lumber Case on the ground that this Court could not

*Stewart v. Whitecap Inv. Corp.*
Civil No. 2010-139
Memorandum Opinion
Page 5

exercise personal jurisdiction over it. On March 21, 2013, this Court denied that motion.

GSWP now moves to dismiss the complaint and the cross-claims asserted against it in the present case for want of personal jurisdiction.

## II. <u>DISCUSSION</u>

### A. <u>Factual Challenge</u>

Once challenged, " '[t]he burden of demonstrating the facts that establish personal jurisdiction,' falls on the plaintiff." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002)). A challenge to a court's exercise of personal jurisdiction may be either facial or factual. In a facial challenge, a court must take all allegations in the complaint as true and the plaintiff "need only establish a prima facie case of personal jurisdiction." *O'Connor v. Sandy Land Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007).

However, if the challenge arises after the allegations in the complaint have been controverted, "the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992) (citing *Time Share Vacation v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 62

*Stewart v. Whitecap Inv. Corp.*
Civil No. 2010-139
Memorandum Opinion
Page 6

(3d Cir. 1984)). The plaintiff may discharge this burden by

producing "affidavits or other competent evidence that [show

that] jurisdiction is proper." *Dayhoff Inc. v. H.J. Heinz Co.*,

86 F.3d 1287, 1302 (3d Cir. 1996).

**B.   Statutory and Due Process Considerations**

"Under Federal Rule of Civil Procedure 4(k), a District

Court typically exercises personal jurisdiction according to the

law of the state where it sits." *O'Connor*, 496 F.3d at 316; *see*

*also* Fed. R. Civ. P. 4(k)(1)(A).

If the exercise of personal jurisdiction comports with

local law, a court must next ask whether, under the Due Process

Clause of the United States Constitution, the defendant has

"certain minimum contacts with . . . [the forum state or

territory] such that the maintenance of the suit does not offend

traditional notions of fair play and substantial justice." *Int'l*

*Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The Due Process Clause recognizes two types of personal

jurisdiction: general and specific. *See O'Connor*, 496 F.3d at

317 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*,

466 U.S. 408, 414-15 & n.9 (1984)). "A court may exercise

general jurisdiction over a defendant where he or she has

'continuous and systematic' contacts with the forum, whether or

not those contacts are related to the plaintiff's cause of

action." *Metcalfe*, 566 F.3d at 334 (citing *Helicopteros*

*Nacionales de Colombia*, 466 U.S. at 416; *BP Chems. Ltd. v.*

*Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 259 (3d Cir. 2000)).

"Specific jurisdiction exists if the defendant has

' "purposefully directed" his activities at residents of the

forum and the litigation results from alleged injuries that

"arise out of or relate to" those activities.' " *Metcalfe*, 566

F.3d at 334 (quoting *Burger King Corp.*, 471 U.S. 462, 472 (1985)

(quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774

(1984); *Helicopteros Nacionales de Colombia*, 466 U.S. at 414)).

" 'If the defendant "maintain[s] continuous and substantial

forum affiliations," then general jurisdiction exists. If the

defendant's contacts fall short of that standard, then at least

one contact must give rise or relate to the plaintiff's

claim.' " *Metcalfe*, 566 F.3d at 334 (quoting *O'Connor*, 496 F.3d

at 321 (quoting *Dollar Sav. Bank v. First Sec. Bank of Utah*, 746

F.2d 208, 212 (3d Cir. 1984)) (citing *Grimes v. Vitalink*

*Commc'ns Corp.*, 17 F.3d 1553, 1559 (3d Cir. 1994)) (alteration

original)).

## III. <u>ANALYSIS</u>

### A.   <u>Virgin Islands Long-Arm Statute</u>

"A district court sitting in diversity may assert personal

jurisdiction over a nonresident defendant to the extent allowed

*Stewart v. Whitecap Inv. Corp.*
Civil No. 2010-139
Memorandum Opinion
Page 8

under the law of the forum state." (citing *Time Share Vacation
Club v. Atl. Resorts, Ltd.*, 735 f.2d 61, 63 (3d Cir. 1984)); *see
also* Fed. R. Civ. P. 4(k)(1)(A). In the Virgin Islands,
establishing personal jurisdiction requires a "two-part
analysis." *Metcalfe*, 566 F.3d at 330. "First, there must be a
statutory basis for exercising jurisdiction over the nonresident
defendant in accordance with the Virgin Islands Long-Arm
Statute, V.I. CODE ANN. tit. 5, § 4903." *Id.* "[S]econd, the
nonresident defendant must have minimum contacts with the Virgin
Islands sufficient to satisfy constitutional due process." *Id.*
(citing *Kelvin Manbodh Asbestos Litig. Series*, 47 V.I. 267, 279
(Super. Ct. 2005) ("[T]he Court's *in personam* jurisdiction is
limited first by the terms of the [long-arm] statute and then by
the Due Process Clause of the Fourteenth Amendment of the
Constitution."); *Godfrey v. Int'l Moving Consultants, Inc.*, 18
V.I. 60, 66 (D.V.I. 1980) ("The proper method of testing
jurisdiction over a nonresident defendant is to first determine
whether the long-arm statute authorizes the Court to exercise
its adjudicatory powers, and then, secondly, to decide if such
an exercise is constitutionally permissible.")

The Virgin Islands Long-Arm Statute provides, in pertinent
part, that

> A court may exercise personal jurisdiction
> over a person, who acts directly or by an

*Stewart v. Whitecap Inv. Corp.*
Civil No. 2010-139
Memorandum Opinion
Page 9

> agent, as to a claim for relief arising from
> the person's
>
> (1) transacting any business in this
>     territory;

V.I. CODE ANN. tit. 5, § 4903(a) ("Section 4903(a)").

To evaluate whether there is personal jurisdiction under the Virgin Islands Long-Arm Statute, the Court must "determine (1) whether the defendant's contacts meet one of the categories under section 4903(a) and then (2) whether the plaintiff's claim 'arises from' that contact." *Molloy v. Indep. Blue Cross*, 56 V.I. 155 (S. Ct. 2012). Here, there is no dispute that GSWP's putative contacts with the Virgin Islands are also what give rise to the present action--namely, the treating of lumber destined for the Virgin Islands and the selling of treated lumber. There is also no dispute that, to the extent GSWP has contacts with the Virgin Islands, it would fall within the "transacting any business" category of Section 4903(a).[1] Thus, the Court's analysis will first focus on determining whether GSWP's conduct is sufficient to constitute "transacting business."

---

[1] In the alternative, the Stewarts, Paradise Lumber, and Putnam Lumber argue that this Court may exercise personal jurisdiction over GSWP under Section 4903(a)(3), which covers individuals who "caus[e] tortious injury" in the Territory. For the reasons discussed herein, the Court finds it unnecessary to reach this issue.

*Stewart v. Whitecap Inv. Corp.*
Civil No. 2010-139
Memorandum Opinion
Page 10

"Under subsection (a)(1), the term 'transacting any business' can be satisfied by only a single act which in fact amounts to the transaction of business within the state or territory." *Fin. Trust Co. v. Citigroup*, 268 F. Supp.2d 561, 567 (D.V.I. 2003) (finding it sufficient under subsection (a)(1) that the defendant entered into a contract with a Virgin Islands resident and solicited the plaintiffs while they were in the Virgin Islands). "[T]ransacting business is a term that connotes activity that is less than doing business, but more than an inconsequential act." *Manbodh Asbestos Litig.*, 47 V.I. at 283; *see also Paradise Motors, Inc. v. Toyota de P.R., Corp.*, 314 F. Supp. 2d 495, 498 & n.4 (D.V.I. 2004) (finding participation in some business activity in the Virgin Islands coupled with the receipt of substantial revenue from the activity sufficient to establish the application of subsection (a)(1) of the long-arm statute).

In *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324 (3d Cir. 2009), Richard and Cynthia Metcalfe (collectively, the "Metcalfes") residents of the Virgin Islands, purchased a boat from Renaissance Marine, Inc. ("Renaissance"), a company based in Florida. The Metcalfes claimed that Renaissance breached the contract of sale, and brought suit in this Court. Renaissance sought to dismiss the action, claiming lack of personal

*Stewart v. Whitecap Inv. Corp.*
Civil No. 2010-139
Memorandum Opinion
Page 11

jurisdiction. In response, the Metcalfes asserted that they
"exchanged phone calls, faxes, and emails with Renaissance while
they were in the Virgin Islands during the process of
negotiating the sale of the [boat]." *Id.* at 332. The Third
Circuit held that, "[b]ecause one single act can constitute
'transacting business,' surely repeated reciprocal
communications between a buyer in the Virgin Islands and a
seller located elsewhere which culminate in an agreement for
sale of an item at a cost of nearly $85,000 also satisfies the
standard under subsection (a)(1)." *Id.*

Similarly, in *Molloy v. Blue Cross Blue Shield*, 56 V.I. 155
(S. Ct. 2012), Gary and Christa Molloy (collectively, the
"Molloys"), residents of the Virgin Islands, brought suit
against Blue Cross Blue Shield Association ("BCBSA") in the
Superior Court of the Virgin Islands. The gravamen of their
complaint was that BCBSA was liable for failing to provide
timely air evacuation services when their infant son suffered
complications caused by his premature birth. Significantly, the
Molloys had no relationship with BCBSA. Rather, they had entered
into a health-insurance agreement with Blue Cross Blue Shield of
the Virgin Islands ("BCBSVI"), an independent company that had
licensed the "Blue Cross Blue Shield" brand name from BCBSA.
Despite this, the Supreme Court of the Virgin Islands held that

*Stewart v. Whitecap Inv. Corp.*
Civil No. 2010-139
Memorandum Opinion
Page 12

BCBSA had transacted business in the Virgin Islands within the meaning of Section 4903(a)(1). The court noted that BCBSA had lobbied Congress in order to secure contracts for BCBSVI to provide insurance to federal employees in the Virgin Islands. The court further noted that BCBSA received substantial income from BCBSVI's licensing fees, a portion of which were derived from revenue produced by the contracts with federal employees. The Court found that "Acting as an agent for an insurance company in the Virgin Islands . . . with the specific purpose of garnering contracts to cover Virgin Islands citizens qualifies as more than an inconsequential act, and indicates BCBSA's intent to transact business within the Virgin Islands." *Id.* at 176.[2]

Here, GSWP argues that it does not and has not transacted any business in the Virgin Islands. In support of this contention, it offers the affidavit of Bill Freeman ("Freeman").

_____

[2] The Virgin Islands Supreme Court ultimately concluded that, although BCBSA's contacts with the Territory indicated an intent to transact business therein, the plaintiff's claims did not "arise from" those contacts. This was so because BCBSA's contacts were not a "but-for" cause of the Molloys claims. Indeed, the Molloys could very well have sustained the same injuries if BCBSA had engaged in no lobbying on behalf of BCBSVI or received no revenue from its licensing arrangement.

As noted above, in this case, there is no dispute that, should GSWP's contacts amount to "transacting business" in the Virgin Islands, they would also be a but-for cause of Paradise Lumber's claims. The gravamen of Paradise Lumber's complaint is that GSWP failed to properly treat certain lumber which was ultimately sold to Paradise Lumber. If none of GSWP's lumber wound up in the Virgin Islands, there would be no basis for Paradise Lumber's claims against GSWP.

*Stewart v. Whitecap Inv. Corp.*
Civil No. 2010-139
Memorandum Opinion
Page 13

Freeman is a general manager at a GSWP lumber-processing facility. He avers that GSWP "has not ever marketed, distributed, or sold treated wood products in the United States Virgin Islands." (GSWP's Ex. 2 ¶ 4.) He further avers that the lumber at issue in this case was simply "treated per specifications provided by Putnam Lumber, and [GSWP] had no involvement with sales by Putnam Lumber of the wood to any end users or retailers." (GSWP's Ex. 2 ¶ 4.) More generally, he avers that

> [GSWP] has never (1) been licensed to do business in the U.S. Virgin Islands; (2) maintained any offices in the U.S. Virgin Islands; (3) employed any persons who reside in the Virgin Islands; (4) advertised in the Virgin Islands; (5) maintained a telephone number in the U.S. Virgin Islands; (6) owned any assets in the U.S. Virgin Islands; (7) held any bank accounts in the U.S. Virgin Islands; (8) transacted any business in the U.S. Virgin Islands; (9) derived substantial revenues from goods manufactured for or sold by [GSWP] to Putnam and used or consumed in the U.S. Virgin Islands or services rendered by [GSWP} in the U.S. Virgin Islands.

(GWSP's Ex. 2 ¶ 5.)

In response, the Stewarts rely on the deposition of Freeman, in which he admits that GSWP received over $2,000,000 in revenue from lumber sales to Putnam Lumber. (Paradise Lumber's Ex. N., Tr. of Dep. of Freeman 695:21-23.) Out of these total sales, GSWP received $432,884.72 for lumber or the

*Stewart v. Whitecap Inv. Corp.*
Civil No. 2010-139
Memorandum Opinion
Page 14

treatment of lumber which was sold in the Virgin Islands. (Pls.'
Ex. 28, at 4, Putnam Lumber's Resp. to Interrogatories.) This
amount of revenue certainly qualifies as "substantial." *See*
*Metcalfe* 566 F.3d at 332 (finding the receipt of $85,000 in
revenue to be "substantial").

What is less clear is whether GSWP engaged in any business
activity in the Virgin Islands to receive this substantial
revenue. Michael Simerly ("Simerly"), GSWP's corporate
representative, admits that in or about 2008, he became aware
that Virgin-Islands customers of Putnam Lumber were complaining
about the quality of GSWP's lumber. (Pls.' Ex. 30, Tr. of Dep.
of Simerly 36:25-37:17.) On July 22, 2008, Simerly sent an email
to Michael Noble ("Noble"), an employee of Putnam Lumber, in
which he stated: "[A]ny material that goes over seas [*sic*] does
not carry a warranty, BUT we can help you out some with this
issue. How many pieces is your customer talking about?" (Pls.'
Ex. 17) Noble replied:

> I'm not sure that the U.S. Virgin Islands is
> considered overseas. are [*sic*] you saying
> that the .15 treatment we bought on 5/4"
> decking which is approved in the United
> States is not covered in the United States
> Virgin Islands? would [*sic*] there be any
> reason it would disintegrate there and not
> here? Per our conversation, every piece of
> 5/4x6/16' RED treated was purchased from
> Great Southern and sold to our only client
> in St. John, U.S.V.I.

*Stewart v. Whitecap Inv. Corp.*
Civil No. 2010-139
Memorandum Opinion
Page 15

(Pls.' Ex. 17.) On October 20, 2009, Simerly again emailed

Noble, asking, "Do you have any TSO items in the works coming to

Jesup or any stock items we can quote into Jax? Have you been

loading any flat racks out of Jax, or are the islands still

slow?" (Paradise Lumber's Ex. V.) Simerly has subsequently

stated that his reference to "islands" in this email "was just a

generic islands as far as the Caribbean." (GSWP's Ex. C., Tr. of

Dep. of Simerly, 37:16–17.)

Confronted with the same evidence in the Paradise Lumber

Case, the Court drew the following conclusions:

> Th[e] evidence suggests that GSWP was aware
> Putnam Lumber did business in the Virgin
> Islands. Moreover, it appears that on at
> least one occasion GSWP sought to do
> business with Putnam Lumber specifically
> because Putnam Lumber sold lumber in the
> Virgin Islands.
>
> This case is thus at least one degree
> removed from *Metcalfe*. There, as here, the
> defendant, Renaissance, never set foot on
> Virgin Islands soil. However, Renaissance
> did engage in several direct communications
> with the plaintiffs, who at that time were
> located in the Virgin Islands. Here, by
> contrast, GSWP never dealt directly with a
> purchaser of its goods located in the Virgin
> Islands. It never sent any communications to
> the Virgin Islands nor received any.
> Instead, it dealt entirely with an
> intermediary--Putnam Lumber--which was not
> itself located in the Virgin Islands.
> Moreover, unlike *Metcalfe*, there is no
> evidence GSWP was aware of the destination
> of the lumber prior to 2008, when it

*Stewart v. Whitecap Inv. Corp.*
Civil No. 2010-139
Memorandum Opinion
Page 16

conducted the majority of its transactions with Putnam.

However, the mere fact that GSWP never did business directly with the plaintiffs is not dispositive. As the Supreme Court of the Virgin Islands has made clear, the determinative inquiry is whether the defendant's conduct evinced "an intent to transact business within the Virgin Islands." *Molloy*, 56 V.I. at 176. In that case, the defendant, BCBSA, did not directly engage in any business with any person in the Virgin Islands. Yet by acting as an agent for a Virgin Islands entity, and receiving substantial revenues from that entity, it was held to have transacted business.

Here, there is evidence that, at least by 2008, GSWP was aware that some portion of the lumber it provided to Putnam Lumber was being shipped to the Virgin Islands. At the same time, GSWP continued to provide lumber and lumber treatment services to Putnam Lumber up until 2009. Specifically, GSWP received $79,575.41 in revenue from lumber that was sold by Putnam in the Virgin Islands in 2008 and 2009. Indeed, the evidence suggests that, on prior occasions, Putnam Lumber specifically requested certain types of lumber from GSWP for resale to the Virgin Islands. It also appears that on at least one occasion, GSWP reached out to Putnam Lumber for the purpose of selling wood to the Virgin Islands, although the evidence as to this point is disputed.

The preponderance of the admittedly limited evidence tends to show that GSWP provided lumber or the treatment of lumber to Putnam, with the knowledge that a portion of this lumber would be resold to the Virgin Islands. The evidence further shows that GSWP was aware of the destination of this lumber prior to at least some of the sales

*Stewart v. Whitecap Inv. Corp.*
Civil No. 2010-139
Memorandum Opinion
Page 17

        it made in 2008 and 2009. Although GSWP did
        not deal directly with a Virgin Islands
        citizen or entity, its position is
        nonetheless similar to that of BCBSA in the
        *Molloy* case. GSWP, like BCBSA, engaged in
        conduct that it knew would bring about
        substantial revenue from the Virgin Islands.
        Indeed, the evidence suggests that GSWP was
        specifically informed by Putnam Lumber that
        certain shipments of lumber would ultimately
        be resold to the Virgin Islands.

        Moreover, as in *Metcalfe*, there is some
        evidence--albeit disputed--that GSWP
        warranted that its lumber would be free of
        defects. This further supports the inference
        that, particularly after it became aware of
        the ultimate destination of the lumber, that
        GSWP intended to have a relationship with
        residents of the Virgin Islands.

*Whitecap Inv. Corp. v. Putnam Lumber & Export Co.*, Civ. No. 2010-139 (CVG), at *25-25 (D.V.I. Mar. 21, 2013) (slip op.) (internal citations to the record omitted). The Court thus concluded that GSWP had transacted business within the meaning of Section 4903(a).

    The present case concerns the same party--GSWP--and the same underlying transactions. The Court thus sees no reason to deviate from its decision in the Paradise Lumber Case. Accordingly, the Court finds that the Virgin Islands Long-Arm Statute would apply to GSWP.

*Stewart v. Whitecap Inv. Corp.*
Civil No. 2010-139
Memorandum Opinion
Page 18

## C.   <u>Due Process</u>

Even if the Virgin Islands Long-Arm Statute applies, the Court must inquire as to whether Due Process would preclude this Court from exercising personal jurisdiction over GSWP.

In order for the assertion of personal jurisdiction to comport with Due Process, as a threshold matter, the defendant must have taken "action . . . purposefully directed toward the forum State." *Pinker*, 292 F.3d at 370 (quoting *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 112 (1987)). "A court may exercise general jurisdiction over a defendant where he or she has 'continuous and systematic' contacts with the forum, whether or not those contacts are related to the plaintiff's cause of action." *Metcalfe*, 566 F.3d at 334. "If the defendant maintain[s] continuous and substantial forum affiliations," then general jurisdiction exists." *O'Connor*, 496 F.3d at 321 (internal citation and quotation marks omitted.)

In *Metcalfe*, the defendant, Renaissance, "sold at least four powerboats to a Virgin Islands rental company and advertised on its website that its boats could be rented from this local company . . . ." 566 F.3d at 335. Renaissance also sold at least seven powerboats to other Virgin Islands residents. Renaissance sold all its boats with a ten-year warranty, thus "obligat[ing] itself to its customers in the

Virgin Islands for many years to come." The Third Circuit found that "Renaissance's sales and advertising demonstrate a pattern of contacts with the Virgin Islands and, when coupled with the ten-year warranty . . . tend to suggest ongoing business relationships between Renaissance and Virgin Islands residents." *Id*. Viewing these contacts cumulatively, the Third Circuit found that there was a sufficient basis for the exercise of general jurisdiction over Renaissance.

Here, for the better part of a decade, GSWP sold hundreds of thousands of dollars of lumber to Putnam Lumber. As discussed above, the evidence shows that GSWP continued to do this for at least a year after learning that Putnam Lumber was selling this lumber in the Virgin Islands. Moreover, on one occasion, GSWP sold lumber directly to MSI, a Virgin Islands corporation. (Pls.' Ex. 28, at 4.) Further, as in *Renaissance*, GSWP warranted that its lumber would be free from rot or other decay for some period of time, although whether or not this warranty was applicable in the Virgin Islands is disputed. (*See* Pls.' Ex. 17.)

Yet, as noted above, this case differs from *Renaissance* in one important respect: GSWP did not contract directly with anyone in the Virgin Islands. Instead, it contracted with Putnam Lumber, which in turn had an ongoing relationship with Paradise

*Stewart v. Whitecap Inv. Corp.*
Civil No. 2010-139
Memorandum Opinion
Page 20

Lumber, in the Virgin Islands. The operative inquiry is thus whether the exercise of personal jurisdiction is constitutional where a defendant has only made contacts with the forum state through a third party.

In *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980), the Supreme Court addressed when a defendant could be subjected to personal jurisdiction for merely placing a good in the stream of commerce. In that case, the defendants sold an automobile to the plaintiffs in New York. A year later, the plaintiffs were involved in an accident in Oklahoma. They sought to assert product-liability claims against the defendants in Oklahoma state court. The Supreme Court found no purposeful contact by the defendants with Oklahoma, and thus no basis for exercising personal jurisdiction over them. However, the Supreme Court was careful to note that "if the sale of a product or manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the [defendants] to serve, directly or indirectly, the market for its product . . . , it is not unreasonable to subject them to suit." *Id*. at 297.

Precisely what is required to give rise to personal jurisdiction under the so-called "stream-of-commerce" theory is not entirely clear. In *Asahi Metal Industry Company, Ltd. v.*

*Stewart v. Whitecap Inv. Corp.*
Civil No. 2010-139
Memorandum Opinion
Page 21

*Superior Court of California*, 480 U.S. 102 (1987), the Supreme

Court offered two different formulations. Justice O'Connor,

writing for a plurality of four, concluded that placement of a

product in the stream of commerce must be accompanied by some

"[a]dditional conduct of the defendant [that] may indicate an

intent or purpose to serve the market in the forum State." *Id.*

at 112. Justice O'Connor provided the following examples of such

conduct: "designing the product for the market in the forum

State, advertising in the forum State, establishing channels for

providing regular advice to customers in the forum state, or

marketing the product through a distributor who has agreed to

serve as the sales agent in the forum State." *Id.*

Justice Brennan, writing for another plurality of four,

disagreed that a finding of such "additional conduct" was

necessary. Instead, he maintained that "[a]s long as a

participant in this process is aware that the final product is

being marketed in the forum state, the possibility of a lawsuit

there cannot come as a surprise." *Id.* at 117 (Brennan, J.,

concurring).

The Court of Appeals for the Third Circuit has not selected

either of the two tests articulated in *Asahi Metal* as the

preferred means of determining whether a defendant has made the

minimum contacts necessary to support the exercise of personal

*Stewart v. Whitecap Inv. Corp.*
Civil No. 2010-139
Memorandum Opinion
Page 22

jurisdiction. Instead, it encourages courts to consider both

tests and then render a decision "based on the facts in the

record." *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149

F.3d 197, 205 (3d Cir. 1998).

In *Pennzoil Products Co. v. Colelli & Associates, Inc.*, 149

F.3d 197 (3d Cir. 1998), the plaintiff, Pennzoil Products Co.

("Pennzoil") sued the defendants in the Western District of

Pennsylvania. The defendants were Ohio corporations with their

principal place of business in Ohio. The defendants produced

solvents used to clean oil wells. The defendants sold these

solvents to oil producers in Ohio. Approximately sixty percent

of the oil produced by the Ohio oil producers was in turn sold

and shipped to Pennsylvania refineries. One of these refineries

was owned by Pennzoil. Pennzoil claimed that the solvents sold

by the defendants to the Ohio oil producers had caused damage to

its Pennsylvania refinery.

To determine whether there was a basis for the exercise of

personal jurisdiction, the Third Circuit applied each of the two

tests from *Asahi Metal*. First, the court applied Justice

O'Connor's standard. It noted that in addition to putting their

chemicals in the stream of commerce, the defendants had sent

several samples to Pennzoil's laboratories in an effort to

resolve the issues the solvents were causing. The Court held

*Stewart v. Whitecap Inv. Corp.*
Civil No. 2010-139
Memorandum Opinion
Page 23

that this showed an intent to "design" a product for the
Pennsylvania refinery market. *Id.* at 206. The Court also noted
that a representative of the defendants had several telephone
conversations with lab personnel at Pennzoil's refinery to
discuss various ways to test the effects of the solvent. This,
the court held, constituted the creation of "channels for
providing regular advice to" Pennzoil's personnel in
Pennsylvania. *Id.* Lastly, the Court noted that the defendants
were motivated to engage in this additional conduct because they
were aware that Pennzoil operated one of the largest refineries
in Pennsylvania, which constituted sixty percent of the Ohio oil
producers' customer base. The Court thus found a sufficient
basis for the exercise of personal jurisdiction under Justice
O'Connor's test.

The Court next considered the test propounded by Justice
Brennan. The Court found abundant evidence that the defendants
"placed goods[,] i.e., solvents[,] in the stream of commerce and
benefited economically from the sale of the final product, i.e.,
crude oil, to refineries in the forum state." *Id.* at 207. The
Court thus concluded that, under Justice Brennan's test, there
were sufficient minimum contacts to warrant the exercise of
personal jurisdiction.

*Stewart v. Whitecap Inv. Corp.*
Civil No. 2010-139
Memorandum Opinion
Page 24

Presented with the same evidence in the Paradise Lumber case, the Court drew the following conclusions:

> [T]he evidence is clear that GSWP placed goods in the stream of commerce--namely, lumber--and benefited economically from the sale of the lumber that ultimately was sent to the Virgin Islands. Moreover, it continued to do so after becoming aware, by 2008 at the latest, of the fact that this lumber was being sold in the Virgin Islands. There is also some evidence that this lumber was protected by a warranty, which would obligate GSWP to Virgin Islands residents for some time after the sales. (*See* Paradise Lumber's Ex. G.) Thus, under Justice Brennan's test, GSWP has made sufficient minimum contacts with the Virgin Islands to be subject to personal jurisdiction in this Court.
>
> What is less clear is whether GSWP has engaged in the type of "additional conduct" contemplated by Justice O'Connor's test. There is no evidence that GSWP "designed" any product specifically with the Virgin Islands market in mind, or that it advertised its products or services in the Virgin Islands. The evidence does show that, on at least one occasion, GSWP offered to provide advice to individuals in the Virgin Islands who were complaining about the quality of the lumber. This evidence tends to suggest that there was a channel through which GSWP offered to provide advice about its products to end-users in the Virgin Islands. It is not clear whether this channel was used more than once. However, the Court notes that GSWP was clearly offering some degree of ongoing assistance when its representative stated "we can help you out some with this issue. How many pieces is your customer talking about?"

*Stewart v. Whitecap Inv. Corp.*
Civil No. 2010-139
Memorandum Opinion
Page 25

Given that the evidence clearly establishes minimum contacts under Justice Brennan's test, and there is evidence of at least one instance of additional conduct directed at the Virgin Islands, the Court finds that GSWP had the minimum contacts with the Virgin Islands necessary for this Court to exercise personal jurisdiction over it.

"After making a determination with regard to minimum contacts, a court has the option of evaluating whether exercising jurisdiction comports with notions of fair play and substantial justice." *Pennzoil Prods.*, 149 F.3d at 205 (internal quotation marks omitted). The factors courts are to consider in this inquiry include: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* at 205-06. In *Pennzoil Products*, the Third Circuit noted in particular that there were "[n]o claims of exorbitant travel expenses, unavailability of evidence, drains on judicial resources or countervailing state interests . . . ." *Id.* at 208.

Likewise, in this case, GSWP has not made any claims that it would be unduly burdened by litigating in the Virgin Islands. The Virgin Islands would certainly have an interest in having these claims litigated here, as the injured parties are all Virgin Islands residents or corporations. Given that the alleged decay of the lumber occurred in the Virgin Islands, and damaged structures in the Virgin Islands, it would seem that this would also be the most convenient forum. As GSWP is not the only defendant in this action, dismissing GSWP

*Stewart v. Whitecap Inv. Corp.*
Civil No. 2010-139
Memorandum Opinion
Page 26

> from this case might force the parties in this case to proceed against GSWP in another forum while simultaneously litigating before this Court. This piecemeal litigation would assuredly be inefficient and a net drain on judicial resources. Lastly, GSWP has not adduced any "countervailing state interest," *id.*, that might be compromised by proceeding with this litigation in this Court.
>
> The Court finds that the exercise of personal jurisdiction over GSWP would be in accord with "notions of fair play and substantial justice." *Id.* at 205.

*Whitecap Inv. Corp. v. Putnam Lumber & Export Co.*, Civ. No. 2010-139 (CVG), at *31-34 (D.V.I. Mar. 21, 2013) (slip op.) (internal citations to the record omitted).

As noted above, the instant motion concerns the same party--GSWP--and the same underlying transactions. The Court thus sees no reason to deviate from its reasoning in the Paradise Lumber Case. Accordingly, the Court finds that the exercise of personal jurisdiction over GSWP in the instant action comports with Due Process.

An appropriate order follows.

S_____
**Curtis V. Gómez**
**Chief Judge**